No. 56,139

STATE OF KANSAS, *Appellant*, v. PATRICK T. MCQUILLEN, *Appellee*.

(689 P.2d 822)

Opinion filed October 26, 1984. 

*Sue Carpenter,* assistant district attorney, argued the cause, and *Joan Hamilton,* assistant district attorney, *Gene M. Olander,* district attorney, and *Robert T. Stephan,* attorney general, were on the brief for appellant.

*Ronald E. Wurtz,* of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: The State appeals from the dismissal of the information against Patrick T. McQuillen for its failure to bring the defendant to trial within 180 days. K.S.A. 22-3402. The informa-

tion charged McQuillen with rape (K.S.A. 21-3502) and aggravated sodomy (K.S.A. 21-3506).

The defendant was charged with rape and aggravated sodomy in a complaint filed November 18, 1982. After the preliminary hearing the defendant was bound over for trial December 6, 1982. Arraignment took place immediately. On January 20, 1983, the defendant's case was set for trial on February 7, 1983. Defendant claimed consent to intercourse.

In preparation for trial the State had the victim, Ms. H., examined by Dr. Modlin, a psychiatrist, to determine if she was suffering from "rape trauma syndrome." January 19, 1983, the defendant filed a motion to compel the victim to submit to a similar examination by defendant's psychiatrist, Dr. Parks. The court sustained the motion January 26, 1983, continuing the trial at the defendant's request to March 28, 1983. March 28, 1983, the date set for trial, the court was informed that the defendant's psychiatrist had been unable to complete his evaluation of the victim. The defense was ready to proceed with the trial if the judge would prohibit all expert witnesses from testifying. The State, to keep the trial court from denying it the use of its expert witness' testimony, requested a continuance of the trial to allow the defendant's psychiatrist to complete his evaluation of the victim. The victim, on her own volition, had discontinued sessions with the defendant's psychiatric expert because of a personality conflict. At the hearing on the motion to continue, the prosecutor stated the victim was willing to resume sessions with the defendant's psychiatrist. At the March 28, 1983, hearing, the trial court granted a continuance to the State and set trial for June 27, 1983. After Dr. Parks completed his evaluation of the victim, a copy of his report was delivered to the State on June 1, 1983.

January 26, 1983, the defendant filed two motions; (1) a motion in limine seeking to prohibit testimony by the State's expert psychiatrist concerning rape trauma syndrome; and (2) a motion to determine the applicability of K.S.A. 60-447a (Weeks), now K.S.A. 1983 Supp. 21-3525, commonly referred to as the rape shield statute. June 17, 1983, a hearing on both motions was held. June 23, 1983, the district court issued a memorandum decision and order. The court ruled:

"[I]t is the conclusion of this Court that expert testimony concerning whether or not the complaining witness in this case suffers from rape trauma syndrome,

should be excluded because its probative value is substantially outweighed by the danger of confusion, unfair prejudice, or misleading the jury as well as the practical considerations stated. There appears to be a substantial likelihood that the admission of such testimony would be violative of the provision of K.S.A. 60-447a.

."The Motion in Limine filed by the defense is sustained and expert testimony as to whether or not the complaining witness may be suffering from rape trauma syndrome will not be permitted to be offered by either party at trial."

June 24, 1983, the State filed a notice of interlocutory appeal. The defendant and his counsel appeared for trial on June 27, 1983. The State did not appear. The district court continued the case while the appeal was pending and released the defendant from the obligations of his bond.

August 10, 1983, the Court of Appeals dismissed the State's interlocutory appeal for lack of jurisdiction. The State requested the district court set the case for jury trial at its earliest convenience. Trial was set for September 20, 1983, by the court.

September 14, 1983, the defendant filed a motion to dismiss the information on the ground he had been denied a speedy trial. The district court later sustained the motion, ruling the State had failed to bring the defendant to trial within 180 days pursuant to K.S.A. 22-3402. The State appeals from the dismissal.

The State contends the trial court erred in dismissing the information for its failure to provide McQuillen with a speedy trial.

K.S.A. 22-3402(2) controls the defendant's statutory right to a speedy trial. That statutory section provides:

"If any person charged with a crime and held to answer on an appearance bond shall not be brought to trial within one hundred eighty (180) days after arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)."

The purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial. The statute establishes certain maximum time limits within which a defendant must be brought to trial. *State v. Ransom,* 234 Kan. 322, 325, 673 P.2d 1101 (1983).

Arraignment in this case occurred on December 6, 1982. Trial was finally set in this case for September 20, 1983. The relevant time period may be broken into segments:

Days
Elapsed

| | | |
|---|---|---|
| 0 | 12/ 6/82 | Defendant arraigned |
| 44 | 1/19/83 | Defendant filed motion to examine victim by his expert |
| 45 | 1/20/83 | Court set case for trial 2/7/83 |
| 51 | 1/26/83 | Court sustained defendant's 1/19/83 motion. Trial reset for 3/28/83. Defendant filed additional motions: (1) motion in limine; (2) motion to determine effect of 60-447a |
| 112 | 3/28/83 | State requested a continuance to allow defendant's expert to complete sessions with victim. Trial reset for 6/27/83 |
| 177 | 6/ 1/83 | State received copy of defendant's expert's report |
| 199 | 6/23/83 | Court sustained defendant's 1/26/83 motions |
| 200 | 6/24/83 | State filed notice of interlocutory appeal |
| 247 | 8/10/83 | State's interlocutory appeal dismissed. Court set trial for 9/20/83 |
| 288 | 9/20/83 | Court sustained defendant's motion to dismiss for lack of speedy trial |

The defendant admits the 49-day delay resulting from the January 26, 1983, continuance is chargeable to the defense. Defendant claims the second continuance granted by the court on March 28, 1983, was requested by the State. Defendant claims on March 28, 1983, the State failed to object to the court's setting the trial on June 27, 1983; therefore, that delay caused by the March 28 continuance is chargeable to the State because the State in its effort to use Dr. Modlin's expert psychiatric testimony was willing to delay trial to obtain the testimony.

Both parties agree the third delay was caused by the State's futile interlocutory appeal and chargeable to the State. The State does not contend the Court of Appeals improperly dismissed its appeal for lack of jurisdiction. Rather, the State argues its interlocutory appeal tolled K.S.A. 22-3402; therefore, the 48 days that elapsed during the appeal are not chargeable to either party.

K.S.A. 22-3604 provides:

"(1) A defendant shall not be held in jail *nor subject to an appearance bond during the pendency of an appeal by the prosecution.*

"(2) The time during which an appeal by the prosecution is pending shall not be counted for the purpose of determining whether a defendant is entitled to discharge under section 22-3402 of this code." Emphasis supplied.

The State then attempts to analyze the Kansas statutory right to a speedy trial, K.S.A. 22-3402, using United States constitutional speedy trial principles. The statutory right and the constitutional right to a speedy trial are distinguishable. *State v. Ransom,* 234 Kan. at 325. The purpose of K.S.A. 22-3402 is to implement and define the constitutional guarantee of a speedy trial. The statute establishes certain maximum time limits within which a defendant must be brought to trial. *State v. Ransom,* 234 Kan. at 325. An accused has the right to trial within the time fixed by the legislature, and when the State fails to commence trial within the time limit, the accused is entitled to be discharged. *State v. Grimes,* 229 Kan. 143, 622 P.2d 143 (1981). The balancing test cited by the State is utilized only in examining a defendant's constitutional right to a speedy trial. See *State v. Rosine,* 233 Kan. 663, 664 P.2d 852 (1983); *State v. Strong,* 8 Kan. App. 2d 589, 663 P.2d 668, *rev. denied* 233 Kan. 1093 (1983).

The State points out that K.S.A. 22-3402(2) requires "any person charged with a crime and held to answer on an appearance bond" shall be brought to trial within 180 days after arraignment. Pursuant to K.S.A. 22-3604(1) the defendant was not subject to an appearance bond during the pendency of the interlocutory appeal by the State. Therefore, the State argues the statutory provision requiring that the defendant be tried within 180 days after the arraignment was tolled during the State's ill-fated interlocutory appeal. This course of reasoning and construction of K.S.A. 22-3604(2) would prevent any interlocutory appeal taken by the State from figuring into statutory speedy trial calculations.

In *State v. Grimes,* 229 Kan. 143, Syl. ¶ 7, the State improperly appealed the granting of a new trial by the district court. This court said:

"The time that an unauthorized interlocutory appeal by the State is pending in the Supreme Court, including extensions of time secured by the defendant in order to respond in that matter, does not delay trial of the accused in the district

court, and such time should not be charged against the accused in computing the 90 and 180-day time periods fixed by K.S.A. 1980 Supp. 22-3402."

In *Grimes,* the State improperly appealed the granting of a new trial by the district court. Here, the State's interlocutory appeal was dismissed for want of jurisdiction and hence was unauthorized. The time that an unauthorized interlocutory appeal by the State is pending in the Supreme Court delays the trial of the accused in the district court, and such time should be charged against the State in computing the 90- and 180-day time periods fixed by K.S.A. 22-3402.

We disagree, however, with the trial court's reasoning that the March 28, 1983, continuance was chargeable to the State. That day the State informed the trial court the victim had completed three sessions with the defendant's psychiatrist, Dr. Parks. During the fourth session with Dr. Parks, a conflict developed between the victim and the doctor. The victim refused to have any more discussions with the doctor and left. Defendant's attorney admitted he had been unable to contact Dr. Parks immediately after he learned of the problem because he was involved in defending another person in a murder trial. Dr. Parks needed additional time with the victim in order to render his opinion.

Defendant's attorney claims it was the complaining witness who had caused the delay of the defendant's trial by refusing to see Dr. Parks. On the March trial date he requested that the court exclude both the State's and defendant's psychiatrists' testimony in an effort not to delay the trial. Defendant's attorney agreed that if the court were to allow the psychiatrists to testify, a continuance requested by the State was necessary to allow Dr. Parks to complete his examination of the victim.

The time limitations for trial may be extended at the State's request beyond the restrictions imposed by K.S.A. 22-3402(1) and (2). An extension can be obtained by the State where material evidence is unavailable, reasonable efforts have been made by the State to procure the evidence and there are reasonable grounds to believe such evidence can be obtained within the limitations contained within the statutes.

If the State fails to bring the accused to trial within the time limits fixed by statute, and the delay is not due to the application or fault of the defendant or to extensions of time allowed by K.S.A. 22-3402(3), Kansas appellate courts have not hesitated to

enforce the legislature's mandate and order a defendant discharged. However, delays which are the result of the application or the fault of a defendant are not counted in computing the statutory period. It is the State's obligation, not the accused's, to provide the defendant with a speedy trial in conformity with the Constitution and the statutes. *State v. Warren*, 224 Kan. 454, 456, 580 P.2d 1336 (1978). The record of the trial court as to the days to be charged against the State and the defendant is to be examined to determine whether or not a dismissal was warranted for the State's failure to bring a defendant to trial within the limitation imposed by statute.

The State had the right to introduce evidence establishing that Ms. H. was suffering from stress similar to rape trauma syndrome. The defendant then had to be given the opportunity to establish that she was not suffering from such stress. Ms. H.'s personality conflict with the defendant's psychiatrist, Dr. Parks, resulted in his inability to complete the diagnosis of Ms. H. Without additional sessions with Ms. H., Dr. Parks was unable to determine if she was suffering from the rape trauma syndrome. In an effort to have Dr. Modlin available to testify as to his findings, the State was forced by the court to request a continuance to allow Dr. Parks, the defendant's expert, to complete his sessions with Ms. H. The court counted the delay caused by this continuance against the State.

Ms. H. was not an agent or officer of the State. Her status is that of a witness/victim, the focal point of the defendant's alleged crime. There is no evidence that any agent of the State encouraged, assisted, or requested that Ms. H. terminate her sessions with the defendant's psychiatrist. This was her own decision based on her personality conflict with Dr. Parks. Ms. H. was willing to see a third person if one was recommended. Ms. H. was under no court order to appear and be diagnosed by Dr. Parks. The State had requested that she appear after Dr. Parks had so requested. After the conflict between them developed, it was the State that convinced Ms. H. to return to Dr. Parks and complete the requested sessions. The State was willing to have the trial continued to allow the defendant's psychiatrist to complete his evaluation of Ms. H. The State wanted to use its expert witness and, to ensure a fair trial for the defendant, the defendant's expert had to complete his evaluation in order to determine

if the victim was or was not suffering the rape trauma syndrome. The State did everything it possibly could to ensure that Ms. H. would cooperate with Dr. Parks. He was able, then, to complete the sessions with Ms. H., and his report was delivered to the State's attorneys June 1, 1983.

Under these facts, when a defendant's trial is delayed because a defendant's psychiatrist is unable to complete his evaluation of the victim due to a personality conflict with the victim, and the victim was not encouraged, assisted, or requested by the State or its agents not to cooperate, that delay cannot be charged to the State. Otherwise, a defendant might employ a psychiatrist who could inadvertently create a situation which would prevent the psychiatrist from completing his evaluation before the time for a speedy trial had run.

The January 26—March 28 continuance (61 days) was at defendant's request and is chargeable to him. The time period running from when the continuance was granted on March 28, 1983, until when the report of the defendant's psychiatrist was delivered to the State on June 1, 1983, a total of 65 days, was therefore also chargeable to the defendant. The 180-day time requirement to bring the defendant to trial had not expired when the court granted the defendant's motion to discharge.

The State next complains the trial court erred in sustaining the defendant's motion in limine to exclude the testimony of Dr. Modlin, the State's expert witness, regarding the rape trauma syndrome, since the defendant claimed the victim consented to intercourse.

The trial judge in his memorandum opinion stated:

"It appears that only a few reported cases have dealt with the precise question of the admissibility of expert testimony to establish whether or not the complaining witness in a rape case suffers from rape trauma syndrome.

"Apparently, the first of these decisions was that of our Kansas Supreme Court in *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982). In this decision, the Supreme Court held in substance that rape trauma syndrome is a scientifically recognized phenomenon and when consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible.

"Shortly after the decision of the Kansas Supreme Court in *Marks,* supra, the Supreme Court of Minnesota had occasion to deal with the same issue in the case of *State v. Saldana,* 324 N.W.2d 227. In a well-reasoned opinion, the Supreme Court of Minnesota took the opposite viewpoint on this issue and reversed and remanded a lower court conviction for rape because such testimony had been

admitted at trial. . . . Rape trauma syndrome, which describes the stages a rape victim typically goes through, is not a fact-finding tool but a therapeutic tool useful in counselling, and evidence of reactions of other people does not assist the jury in its fact-finding task. It was held that the expert testimony should have been excluded because its probative value was substantially outweighed by the danger of unfair prejudice, confusion or misleading the jury. The Court stated at page 230 of the opinion:

" 'To allow such testimony would inevitably lead to a battle of experts that would invade the jury's province of fact-finding and add confusion rather than clarity.'

"In another decision, the Supreme Court of Minnesota followed its ruling in *Saldana,* supra. In *State v. McGee,* 324 N.W.2d 232, it reversed a rape conviction where a doctor was permitted to testify that the complaining witness suffered from symptoms consistent with rape trauma syndrome.

"In an opinion filed March 15, 1983, in *State v. Taylor,* No. 45336, the Missouri Court of Appeals for the Eastern District treated the same issue and followed the decision of the Minnesota Supreme Court in *Saldana,* supra, after noting the Kansas decision in *Marks,* supra. A review of this opinion indicates that Missouri follows a more restrictive rule as to the admissibility of expert testimony than does Kansas. The rule in Missouri is that expert opinion testimony should never be admitted unless it is clear that the jurors themselves are not capable, for want of experience or knowledge of the subject, to draw correct conclusions from the facts proved. The Missouri Court of Appeals also concluded in this decision that the admission of psychiatric opinion testimony will inevitably lead to violations of the Missouri rape shield statute, the same point being raised by the defendant in the instant case.

. . . .

"After the events which have taken place in this case, the rationale expressed by the Minnesota Court in *Saldana,* supra, appears to be more persuasive. After considering the expert testimony of Dr. Gilbert Parks at the hearing on these Motions and examining some of the psychiatric treatises cited in the various opinions dealing with this subject, it is clear that rape trauma syndrome, while generally recognized in psychiatry as a valid diagnosis, is not employed by psychiatrists as a fact-finding tool but as a therapeutic tool useful in the diagnosis and treatment of victims of traumatic stress disorders."

The trial judge ordered the evidence of the rape trauma syndrome excluded from the trial.

In the majority of the cases cited by the trial judge in his memorandum opinion, the defendants admitted that sexual intercourse had occurred but claimed it was consensual. An "expert" was allowed to describe the typical post-rape symptoms and behavior of rape victims and the expert then gave his opinion that the rape victim had not fabricated her allegations. The expert was then allowed to testify as to whether or not he believed the victim was telling the truth in stating she was raped by the defendant, thus creating the presumption that she was

raped. This is the common thread in the cases where courts have found evidence of rape trauma syndrome to be inadmissible—the evidence offered by the expert was evidence affirming the rape by the defendant.

In *State v. Saldana,* 324 N.W.2d 227 (Minn. 1982), the court found that the scientific evaluation of rape trauma syndrome had not "reached a level of reliability that surpasses the quality of common sense evaluation present in jury deliberation." 324 N.W.2d at 230. Kansas, however, reached an opposite conclusion in *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982). California, which refused to allow testimony of rape trauma syndrome in *People v. Bledsoe,* 36 Cal. 3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), has not, however, totally outlawed use of such evidence. The *Bledsoe* court observed that evidence of such has been admitted in a number of California cases where it has played "a particularly useful role by disabusing the jury of some widely held misconceptions about rape and rape victims, so that it may evaluate the evidence free of the constraints of popular myths." 36 Cal. 3d at 247-48.

The *Saldana* court held that the expert's testimony could not be admitted to show that the victim was raped. This was also the conclusion in *State v. Taylor,* 663 S.W.2d 235 (Mo. 1984), where the Supreme Court of Missouri, en banc, found that a properly qualified expert in the psychological testing fields may testify that the patient, client or victim does possess and exhibit the characteristics consistent with those resulting from a traumatic stress reaction, such as rape. Under the circumstances of that case, Dr. Amanat, the expert witness, went too far in expressing his opinion that the victim suffered rape trauma syndrome as a consequence of the incident with the defendant at Mary's Moonlight Lounge. That conclusion vouched too much for the victim's credibility and added a quantity of factualness to the victim's testimony on the critical issue of whether the defendant raped her.

In *People v. Bledsoe,* 36 Cal. 3d 236, the rape trauma syndrome testimony was introduced as a means of proving that a rape had occurred. The court held that such testimony was inadmissible for the purpose of proving the witness was raped, but went on to add that "nothing in this opinion is intended to imply that evidence of the emotional and psychological trauma that a com-

plaining witness suffers after an alleged rape is inadmissible in a rape prosecution." 36 Cal. 3d at 252.

In *State v. Marks,* 231 Kan. 645, the testimony of Dr. Modlin, the State's expert witness, was based on the symptoms he noted during his psychiatric evaluation of the witness. Dr. Modlin testified that the witness was the victim of a "frightening assault, an attack" and was suffering from the post-traumatic stress disorder known as "rape trauma syndrome." He never stated that the victim was raped or that the stress which caused her disorder was the result of a rape. He also did not testify that the cause of the victim's disorder was intercourse with the defendant.

We disagree with the trial court's determination that the court's reasoning in *Marks* was incorrect. We reaffirm "[w]hen consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding *the existence* of 'rape trauma syndrome' is relevant and admissible." 231 Kan. 645, Syl. ¶ 8, emphasis supplied. The expert may testify that the patient/victim does possess and exhibit the emotional and psychological trauma consistent with rape trauma syndrome.

Finally, the trial court found admission of testimony concerning the rape trauma syndrome would violate the rape shield provisions of K.S.A. 60-447a (Weeks), now K.S.A. 1983 Supp. 21-3525, which states in part:

"(2) Except as provided in subsection (3), in any prosecution to which this section applies, evidence of the complaining witness' previous sexual conduct with any person including the defendant shall not be admissible, and no reference shall be made thereto in the presence of the jury, except under the following conditions: The defendant shall make a written motion to the court to admit evidence or testimony concerning the previous sexual conduct of the complaining witness. The motion must be made at least seven days before the commencement of the trial unless that requirement is waived by the court. The motion shall state the nature of such evidence or testimony and its relevancy and shall be accompanied by an affidavit in which an offer of proof of the previous sexual conduct of the complaining witness is stated. The court shall conduct a hearing on the motion in camera. At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the previous sexual conduct of the complaining witness is relevant and is not otherwise inadmissible as evidence, the court may make an order stating what evidence may be introduced by the defendant and the nature of the questions to be permitted. The defendant may then offer evidence and question witnesses in accordance with the order of the court."

The statute is not an absolute prohibition against the defendant presenting evidence of the complaining witness' prior sexual

conduct. Nor does the statute prohibit the prosecuting attorney from introducing evidence of previous sexual conduct of the complaining witness. K.S.A. 1983 Supp. 21-3525(3). Expert testimony submitted by the State of the rape trauma syndrome when exhibited by the complaining witness would not violate the statute. Safeguards are still contained within the statute to protect the victim. A showing of relevancy is still necessary before the complaining witness' prior sexual conduct may be admitted into evidence on behalf of the defendant.

The defendant claims this court's approval of the rape trauma syndrome as substantive evidence in a rape trial, where consent is the issue, provides a legal method by which the defendant can evade K.S.A. 1983 Supp. 21-3525(3). The statute, however, applies only to prior sexual activity, not to whether the act in question was consensual. When consent to intercourse is the issue and the State's expert has testified that the victim is suffering from rape trauma syndrome, the defendant's attorney may cross-examine the State's expert to determine how the expert arrived at that conclusion. The defendant may bring in his own expert witness in rebuttal to testify that the victim is not suffering from rape trauma syndrome. Such rebuttal evidence, however, would not allow wholesale admittance of the victim's past sexual conduct, unless that information was used by the State's expert to make his determination of rape trauma syndrome. Otherwise, the trial court would still be required to determine the relevancy of such evidence before allowing its admission into evidence.

Nor may a defendant present evidence that the victim was not suffering from rape trauma syndrome where the State has not first introduced evidence that the victim was suffering from rape trauma syndrome. There are no statistics to show that there is any value to a negative finding that the rape trauma syndrome is not exhibited by the alleged victim. Negative evidence to be admissible must have some probative value. Where consent is the defense in a prosecution for rape, expert testimony of the absence of the rape trauma syndrome is not relevant or admissible.

Reversed and remanded for trial.

HOLMES, J., concurs in the result.

HERD, J., concurring: The dissents cause me to re-examine the

reasons for our adopting the admissibility of evidence of rape trauma syndrome in *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982). It was a responsible reaction to one of the greatest blights on our civilization. There are over 80,000 rapes reported in this country each year. The reported rapes are only the tip of the iceberg. Because of the humiliation to the victim and the stigma attached to having been raped it is estimated only one tenth of the rapes and attempted rapes are reported.

Prosecution of a rapist is a difficult task. By its nature, rape is usually committed in a secluded place witnessed by only the assailant and the victim. Thus, the trial involves the victim's word against the accused's with little other evidence. This presents a hard question for a jury. Psychiatry offers some assistance. Experts in the field have established through their work with rape victims that there are reactions to forcible rape common to all rape victims. They suffer a significant degree of physical and emotional trauma, unique to rape victims, which carries over for a long time. Most victims never fully recover from the emotional scars left by the experience. This is rape trauma syndrome. It is characterized by an initial acute phase during which the victim's lifestyle is completely disrupted by feelings of fear, anger, loss of self-esteem, insomnia, humiliation, uncleanliness and anxiety.

The long-term effect, which is the second phase of the trauma, involves a complete reorganization of the victim's lifestyle. Many are able to resume only a minimal level of functioning after the acute phase ends. The victims display uneasiness. They stay home, venturing out only in the company of a friend. Often they find it necessary to change their residence, particularly if it was the scene of the assault. Victims usually are apprehensive about answering the telephone for fear the assailant may again make contact with them. Many victims develop phobic reactions to a wide variety of circumstances, such as fear of crowds, fear of being alone, or fear of the sights, sounds and odors associated with the rape. All victims are left with some paranoia. Most victims have a fear and dread of sexual contact after a rape. A psychiatric expert trained in the field can diagnose rape trauma syndrome from this unique combination of symptoms. Rape trauma syndrome is clearly distinguishable from guilt from an

immoral act or fear of an unwanted pregnancy, referred to in the dissent of Chief Justice Schroeder.

The use of psychiatric testimony for the limited purpose of proving a rape occurred, where the accused contends the sex was consensual, is not a dramatic departure from the use of psychiatric testimony in other areas of criminal law. We have long admitted psychiatric evidence to show the competency and mental state of an accused. Such evidence does not invade the province of the jury as feared by the Minnesota Supreme Court in *State v. Saldana*, 324 N.W.2d 227 (Minn. 1982). It does not attempt to establish the time or place of the rape nor the identity of the rapist, which were the reasons for the Missouri court holding evidence of rape trauma syndrome inadmissible in *State v. Taylor*, 663 S.W.2d 235 (Mo. 1984).

In *People v. Bledsoe*, 36 Cal. 2d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), the California court states it disagrees with our decision in *State v. Marks* but a close examination of the issues in *People v. Bledsoe* shows it to be clearly distinguishable from *Marks*. In California the witness called to give testimony was merely a rape counselor, not a psychiatrist, and therefore would not qualify as an expert under *Marks*.

The argument that admitting evidence of rape trauma syndrome would nullify the rape shield statute in those cases is certainly a possibility which the prosecutor would need to take into consideration in planning his trial tactics in cooperation with the victim. However, it must be remembered in most cases the sexual history of the victim is unnecessary to diagnose rape trauma syndrome. The principal value of the victim's sexual history to the psychiatrist is in treatment rather than diagnosis.

The dissent complains of the unfairness of the majority holding that "expert testimony of the absence of the rape trauma syndrome is not relevant or admissible." I read the majority opinion to mean that in the absence of evidence offered to prove rape trauma syndrome an accused may not offer evidence to prove the absence of such trauma, but if such evidence is offered he can rebut it with his own expert.

As a final issue I must point out that the trial court improperly reversed *State v. Marks*, 231 Kan. 645, holding: "[T]he decision of our Supreme Court . . . should be reconsidered in the light of subsequent judicial decisions . . . ." The decisions cited by the trial court as authority for its reversal of this court's

decision are cases from Minnesota and Missouri and not Kansas precedent. The issue presented is fundamental to our system of jurisprudence:

"The decisions of the court of last resort in a state furnish imperative and binding precedents for the guidance of all the courts over which it exercises appellate jurisdiction; and the judges of all the inferior courts are bound to accept and follow such precedents implicitly, without regard to their own previous decisions or their independent views of the law." Black's Law of Judicial Precedents § 90 (1912).

The decisions of the highest appellate court of a state are the law of that state just as the decisions of the U.S. Supreme Court are the law of the land. The rule of precedent or stare decisis is based on sound reasoning. Von Moschzisker, *Stare Decisis, Res Judicata and Other Selected Essays,* p. 2 (1929), stated:

"[T]he rule of *stare decisis* is not a contrivance to hamper the judge in administering justice, but is intended to advance the general usefulness of the law and thus benefit the greatest number. It expedites the work of the courts by preventing the constant reconsideration of settled questions; it enables lawyers to advise their clients with a reasonable degree of certainty and safety; it assures individuals that, in so far as they act on authoritative rules of conduct, their contract and other rights will be protected in the courts; and, finally, it makes for equality of treatment of all men before the law and lends stability to the judicial arm of government."

I concur in the majority opinion.

Schroeder, C.J., dissenting: The events causing confusion and delay in this case, coupled with the indirect circumvention of the rape shield statute, K.S.A. 1983 Supp. 21-3525, indicate, in my opinion, that our court was too hasty in recognizing expert opinion testimony concerning "rape trauma syndrome" as relevant evidence in *State v. Marks,* 231 Kan. 645, 647 P.2d 1292 (1982). For the reasons hereafter stated *Marks* should be overruled.

The problems inherent in allowing an "expert" to testify that the victim is suffering from "rape trauma syndrome" in a prosecution for rape were thoroughly discussed by the Missouri and Minnesota Supreme Courts in the cases cited by the majority and the trial court in the instant case. At the outset it is important to note the majority opinion misconstrues the holdings in these cases when stating error was predicated upon the fact that "the expert was allowed to testify that the victim was telling the truth

when she stated that she had been raped by the defendant." In *State v. Saldana*, 324 N.W.2d 227 (Minn. 1982), the Minnesota court held the admission of *any expert testimony* concerning rape trauma syndrome was error because a discussion of the symptoms a rape victim typically exhibits and whether or not the prosecutrix exhibits those symptoms is of no assistance to the jury, and produces an extreme danger of unfair prejudice. The court stated:

"Permitting a person in the role of an expert to suggest that because the complainant exhibits some of the symptoms of rape trauma syndrome, the complainant was therefore raped, unfairly prejudices the appellant by creating an aura of special reliability and trustworthiness. Since jurors of ordinary abilities are competent to consider the evidence and determine whether the alleged crime occurred, the danger of unfair prejudice outweighs any probative value. To allow such testimony would inevitably lead to a battle of experts that would invade the jury's province of fact-finding and add confusion rather than clarity." 324 N.W.2d at 230.

After holding evidence of "rape trauma syndrome" to be inadmissible the court then went on to consider the "second segment" of the expert's testimony—the admissibility of the expert's opinion that the victim had been raped and that the victim had not fantasized the rape; in other words, that the victim was telling the truth when she stated she had been raped. 324 N.W.2d 230, 231. In *State v. McGee*, 324 N.W.2d 232 (Minn. 1982), the court reiterated its holding in *Saldana*, making it clear that *the introduction of any expert evidence that the alleged victim exhibited symptoms consistent with rape trauma syndrome was fundamental error and sufficiently prejudicial to require a new trial.* This holding was not qualified in any way so that it could be construed as applying only where the expert was allowed to express an opinion as to the truth of the victim's statements.

In *State v. Taylor*, 663 S.W.2d 235 (Mo. 1984), the Missouri Supreme Court recognized that because post-traumatic stress syndrome could *result from a number of stressful events*, as the expert there testified, an expert who bases his diagnosis upon *his belief of what the patient tells him* is not qualified to testify that the victim is suffering from rape trauma syndrome as a consequence of a particular incident. Under these circumstances the expert was qualified only to state the prosecutrix' symptoms "were consistent with a traumatic experience—even a stressful

sexual experience." However, the expert was not qualified to say the victim was raped by the defendant at a particular time and place. 663 S.W.2d at 241. The court held in that case the expert testimony that the victim was suffering from rape trauma syndrome was inadmissible where the defendant contended intercourse was consensual, stating:

"The only issue in this case was whether the intercourse was forcible or consensual. The state did not need to prove that the victim suffered from rape trauma syndrome in order to sustain its burden of proof on that issue. The jury could determine whether the intercourse was forcible based on its own evaluation of the physical evidence and testimony and credibility of the witnesses. There is a risk that the jury will regard the expert's opinion that a victim suffers from rape trauma syndrome resulting from a forcible assault as dispositive on the issue of consent. *The term itself connotes rape.* And a hazard exists from 'the misleading aura of certainty' that surrounds scientific evidence. . . . There is also danger that the expert testimony will divert the jury's attention from the real issue and cause confusion with numerous collateral issues." 663 S.W.2d at 241-42. (Emphasis added.)

A recent California case has also held evidence of rape trauma syndrome is inadmissible to prove that the complainant was raped. See *People v. Bledsoe,* 36 Cal. 3d 236, 251, 203 Cal. Rptr. 450, 681 P.2d 291 (1984).

These cases and the case at hand illustrate the numerous problems associated with the admissibility of evidence concerning *rape* trauma syndrome. The issue should be reexamined by this court. *The symptoms of rape trauma syndrome, which is a type of post-traumatic stress syndrome, may be caused by any psychologically traumatic or stressful event.* See *State v. Saldana,* 324 N.W.2d at 229; *State v. Taylor,* 663 S.W.2d at 240, 241. See also 2 Kaplan, Freedman & Sadock, Comprehensive Textbook of Psychiatry III, p. 1519 (3rd ed. 1980). Our court was confronted with "post-traumatic stress disorder" in *Hoard v. Shawnee Mission Medical Center,* 233 Kan. 267, 271, 662 P.2d 1214 (1983), in a different factual situation. As recognized by the court in *Taylor,* symptoms associated with rape trauma syndrome may actually be caused by a stressful sexual experience to which the patient fully consented, but perhaps later regretted or had difficulty reconciling with her conscience. The defendant's expert witness in this case testified before the trial court that symptoms of rape trauma syndrome may be present in a woman who voluntarily has been sexually involved with someone against her moral or religious values, and becomes pregnant. The

expert further testified a diagnosis of the patient's symptoms is based upon what the patient has told him. In other words, the expert assumes the patient is telling the truth. See also *State v. Taylor*, 663 S.W.2d at 240. Often, however, the patient may say or believe she has been raped, when in fact she has not, but because of her values or upbringing cannot accept or refuses to believe she voluntarily consented to such activity.

Diagnosis of rape trauma syndrome is merely a therapeutic tool useful in counseling, but is not a factfinding tool, as it is based solely upon the "facts" related by the victim, and should be limited to use as such. See *State v. Saldana*, 324 S.W.2d at 230. As emphasized by both Missouri and Minnesota courts, evidence of reactions of other people to stressful situations, or evidence that the prosecutrix may have experienced some stressful sexual experience which may or may not have involved the defendant or the particular incident in question, does not assist the jury in its factfinding function and serves only to bolster the credibility of the prosecutrix' testimony by unrelated "scientific" evidence. *State v. Saldana*, 324 N.W.2d at 230; *State v. Taylor*, 663 S.W.2d at 241. Our court has frequently held expert testimony is not admissible as it relates to credibility of witnesses. See *State v. Hobson*, 234 Kan. 133, 160, 671 P.2d 1365 (1983); *State v. Moore*, 230 Kan. 495, 497, 639 P.2d 458 (1982).

It was also emphasized by the Minnesota and Missouri courts that there are inherent prejudicial implications from the use of the term "rape trauma syndrome" for it suggests the symptoms experienced by the patient may only be caused by "rape." *State v. Taylor*, 663 S.W.2d at 240. The term itself presupposes the existence of a rape. The prejudicial effect of an expert's testimony that a victim is suffering from psychological symptoms associated with rape tends to corroborate the truthfulness of the victim's testimony that she was raped, and clearly outweighs any probative value of such evidence. 663 S.W.2d at 241. Such evidence unfairly prejudices the defendant "by creating an aura of special reliability and trustworthiness," *State v. Saldana*, 324 N.W.2d at 230, and encroaches too far upon the exclusive province of the jury to weigh the credibility of the witnesses and determine the truthfulness of their testimony. Both courts held that because the jury could determine whether intercourse was forcible based on its own evaluation of the evidence, the risk that

the jury would place undue emphasis on the expert's testimony outweighed any probative value of evidence concerning rape trauma syndrome. *State v. Taylor*, 663 S.W.2d at 241; *State v. Saldana*, 324 N.W.2d at 230. In a case such as this one where the determination of guilt or innocence is based solely upon whether the jury believes the defendant's or victim's version of the facts, the jury is capable of weighing the evidence and reaching a determination without the necessity of expert testimony concerning rape trauma syndrome. The admissibility of this type of evidence in a case of this nature serves only to allow an expert witness to bolster the victim's credibility by venturing an opinion which is based solely upon the expert's belief of the truthfulness of the victim's statements. Experts are not allowed under other circumstances to testify concerning the truthfulness of another witness's statements. This rule should apply to evidence of this nature also.

The admissibility of evidence concerning rape trauma syndrome must also be considered in light of our so-called "rape shield statute." K.S.A. 1983 Supp. 21-3525. The defendant's expert testified before the trial court that it is important to have information concerning the victim's past sexual involvements in order to determine whether she is suffering from rape trauma syndrome. See also 2 Kaplan, Freedman & Sadock, Comprehensive Textbook of Psychiatry III, p. 1519. It is well established in this state that an expert witness may be examined concerning the facts upon which his opinion is based. *State v. Garcia*, 233 Kan. 589, 599, 664 P.2d 1343 (1983). It follows that where expert opinion testimony concerning rape trauma syndrome is admitted into evidence the intimate details of the victim's sexual past may be paraded before the court and the jury because that history forms a substantial basis of the expert's opinion. This would directly contravene the purpose of the rape shield statute as stated in *State v. Williams*, 224 Kan. 468, 470, 580 P.2d 1341 (1978):

"K.S.A. 60-447a [(Weeks) now K.S.A. 1983 Supp. 21-3525] is aimed at eliminating a common defense strategy of trying the complaining witness rather than the defendant. The result of this strategy was harassment and further humiliation of the victim as well as discouraging victims of rape from reporting the crimes to law enforcement authorities."

It is also well established that so-called "expert" testimony may not be based upon hearsay statements of the victim, such as

statements regarding her past sexual history, which are not in evidence. The court in *State v. Marks*, 231 Kan. at 655, quoted the following language from *Klein v. Wells*, 194 Kan. 528, 539, 400 P.2d 1002 (1965), which is clearly applicable here:

" 'It has long been settled that an expert witness may base his opinion upon matters within his personal knowledge or observation, or upon competent evidence in the case, or upon both. Likewise, it has been held that a physician may not testify as to what a patient said in respect to past history of the case, or the cause or duration of the injury. Neither can he give an opinion based partially upon his personal examination and partially upon what the patient told him in reference to the past history of the case, and also upon statements of third persons in reference thereto. [Citations omitted.] The history of the case is within the hearsay rule and therefore is not a proper foundation for an opinion based on competent evidence. If, however, the so-called "history" is made up of facts which in themselves are competent evidence, and which are in evidence, then any objection to the use of such history must fall.' "

In *Klein v. Wells*, it was held that although the history relied upon by the doctor in forming his opinion was within the hearsay rule, the doctor's testimony was competent because the facts comprising the history had actually been put in evidence. 194 Kan. at 539-40. In *Marks* the court stated:

"This case is well within the exception noted in *Klein v. Wells*. The 'history' of this case is made up of facts which were received into evidence through the testimony of the victim and her roommate. Further, Dr. Modlin's testimony was based on symptoms he noted during his psychiatric evaluation of the victim. In this sense his conclusions were based on data personally perceived by him." 231 Kan. at 655.

As a matter of fact, the "history" referred to in *Marks* was the *history of the events surrounding the alleged rape,* which was testified to by the victim and her roommate. The *past sexual history* of the victim *was not in evidence.* However, as in the present case, the victim's past sexual history was used by the expert to draw his conclusions, thereby giving full credence to the truth of the victim's statements. Where such past sexual history is not in evidence it falls within the hearsay rule and is not a proper foundation for expert opinion testimony. Under the rule discussed in *Klein v. Wells,* expert opinion testimony based in part upon the victim's past sexual history which is not in evidence is inadmissible. This rule should have been applied in *Marks* to reject the testimony of the State's expert on rape trauma syndrome. The decision in *Marks* was ill-conceived and devoid

of any of the complications presented by the facts in this case, and should be overruled.

I also disagree with the majority opinion which holds a defendant may not present expert evidence that a rape victim does not display signs of rape trauma syndrome, because "[w]here consent is the defense in a prosecution for rape, expert testimony of the absence of the rape trauma syndrome is not relevant or admissible." This holding of the court is fundamentally unfair and unduly prejudicial to a defendant in a rape prosecution. Rape is a difficult charge to defend; therefore, a defendant in a rape case should not be sandbagged by a rule of evidence. If the State can present an expert to testify that the victim suffers psychological symptoms associated with rape, in the absence of evidence from an expert on the subject by the defendant, the reverse should also be the rule by permitting the defendant to present expert evidence that the prosecutrix does not suffer from such symptoms.

As a final point, on the facts presented by the record herein, it is my opinion the defendant was not brought to trial within 180 days as required by K.S.A. 22-3402(2) and is entitled to be discharged.

A mere reading of the court's opinion in this case focuses upon the intolerable burden placed upon the prosecution where evidence of rape trauma syndrome is to be admitted at the trial of a defendant through expert testimony. The court has fashioned new law to hold the delay encountered by the victim's refusal to cooperate with the defendant's psychiatrist is not chargeable to the State. The *victim is the complaining party,* definitely associated with the State's case. Here a continuance was granted from March 28, 1983, to June 27, 1983, upon the *State's* request, in order for the defendant's psychiatrist to complete his evaluation of the victim. Charging the majority of this delay, which was directly caused by the victim's refusal to cooperate with the defendant's psychiatrist, to the defendant is clearly erroneous.

The court describes this delay as having been caused by a "personality conflict" with the victim and the defendant's psychiatrist. The facts are that the victim in the first three sessions with the defendant's psychiatrist refused to cooperate when an effort was made to inquire into the victim's sexual history. The fourth session was broken up for the same reason. She refused to go for a further session until after the passage of much time when

she was persuaded to cooperate. If the defendant was entitled to have his expert examine the victim for possible rape trauma syndrome, the defendant cannot be charged with the delay caused by the uncooperative victim. To say the State is not chargeable with this delay is ludicrous. Under K.S.A. 22-3402 all time is charged against the State "unless the delay shall happen as a result of the application or fault of the defendant, or a continuance shall be ordered by the court under subsection (3)." None of the reasons set forth in subsection (3) for extending the time of trial beyond the limitations of the statute apply in this case. The State here was not seeking material evidence *for the State* under K.S.A. 22-3402(3)(c).

The court's position can be readily tested by a hypothetical case. Assume the victim in a rape case absolutely refuses to cooperate with the defendant's psychiatrist, as here, for a period of ten years or more, where the defendant is incarcerated pending trial for his failure to post bond. Is the victim permitted to circumvent the speedy trial requirements and thwart the orderly procedure designed for speedy trial?

It is respectfully submitted the judgment of the learned trial judge discharging the defendant should be affirmed, and *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), should be overruled.

PRAGER, J., joins in the foregoing dissenting opinion.

MILLER, J., dissenting and concurring: I agree with the Chief Justice that the rule set forth in Syllabus ¶ 8 of *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982):

"When consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding the existence of 'rape trauma syndrome' is relevant and admissible,"

and corresponding portions of the *Marks* opinion, should be overruled. I also agree with the Chief Justice that if evidence of rape trauma syndrome is to be admissible, then evidence as to the absence of the syndrome should also be admissible.

I agree with the majority opinion, however, on the speedy trial issue. The continuance granted on March 28, 1983, was for the purpose of allowing the defendant's expert to complete his examination. Under the peculiar facts of this case, the ensuing delay should not be charged to the State.