No. 47,551

STATE OF KANSAS, *Appellee,* v. EUGENE R. MCCLAIN, *Appellant.*

(533 P. 2d 1277)

Opinion filed April 5, 1975.

*Joel W. Meinecke,* of Topeka, argued the cause and was on the brief for the appellant.

*Donald P. Morrison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: Eugene R. McClain was convicted by a jury of the offense of aggravated robbery. His motion for new trial was denied, he was sentenced and now appeals.

Grover's Smokehouse, 1020 North Topeka Avenue, Topeka, was the scene of the robbery which occurred the night of Sunday, December 17, 1972. Present in the establishment were the assistant manager and two other employees. The employees were closing the place and the assistant manager was counting the evening's receipts. At about 11:00 p. m. a fourth employee, who had been outside listening to tapes in an automobile, entered the back door of Grover's followed by two black males armed with pistols. The pair announced a holdup. One of them was wearing an orange ski mask covering his face and the other had a cut up pillow case over his head. The assistant manager was forced to hand over the money to the robbers. Approximately $2,700 in seven money bags was taken, consisting of three days' receipts plus currency and change. The robbers then herded the four employees into the walk-in cooler in the building and departed. After a few minutes in the cooler the employees emerged and called the owner, who in turn notified the police of the holdup. One of the employees discovered that her billfold had been taken from her purse.

Patrol officers Crenshaw and Cloutier were among several policemen who responded to the reported robbery. Meanwhile a woman reported to police that two black males were prowling in her back yard at 1125 North Jackson (about two blocks from Grover's). This report was relayed to officers Crenshaw and Cloutier who proceeded to that area. Cloutier left the police car and Crenshaw drove down the alley west of Jackson using his searchlight. Crenshaw saw appellant getting out of a pickup truck parked in the alley near a garage. The officer placed appellant under arrest. A few minutes later another officer arrested Robert McClelland at Kansas avenue and Morse street., which was about three blocks away. The pickup truck from which appellant was alighting belonged to McClelland's father, who had given Robert permission to use the truck that night.

A search of the immediate area where appellant was arrested revealed two loaded pistols, some clothing and seven money bags containing money corresponding to that taken at Grover's. The clothing consisted of a pair of coveralls and a blue sweatshirt. The billfold taken from the employee's purse was found in a pocket of the blue sweatshirt.

The following morning while they were still in jail appellant's clothing and that worn by McClelland was taken from them and sent in plastic bags to the Kansas Bureau of Investigation laboratory.

At trial Ronald Jones, a forensic chemist with the KBI, testified he had vacuumed the interior of the blue sweatshirt with a vacuum cleaner specially designed to extract and retain foreign matter; he repeated the procedure on the exterior of appellant's shirt; the fibres and debris thus obtained were then microscopically compared and five different fibres and one type of metal fragment were determined to be common to the blue sweatshirt and the shirt removed from appellant. Jones testified there was a very significant probability the sweatshirt had been worn over appellant's shirt. He further testified the probability of finding five foreign common fibers on two items of clothing that had not been in contact were about one in 3,200,000; that when the metal fragment is added the probability goes up to one in 65,000,000. The comparison was repeated on the coveralls and McClelland's clothing and the result was the finding of nine fibers common to both.

Appellant testified in his own behalf. The substance of his testimony was that on the night in question he was walking in the north Topeka area when he was given a ride by two Negro males in a pickup truck; they headed in a northerly direction for a couple of blocks when the police helicopter appeared overhead; the driver went into an alley, stopped the truck and left; appellant became scared and ran but then returned to the truck; he noticed two pistols in the truck; for fear of being implicated he threw the pistols over the truck and then waited for the police; he did not assist or participate in the robbery of Grover's Smokehouse.

Upon appeal appellant does not challenge the sufficiency of the evidence to convict him but asserts three trial errors. His first point on appeal is: "It was improper to permit any expert opinion evidence concerning fiber comparisons from Ron Jones because his qualifications were lacking in that subject."

As indicated, Mr. Jones testified concerning his microscopic examination of fibers and a metal fragment which were found to be common to the exterior of the shirt worn by appellant at the time of his arrest and the interior of the blue sweatshirt containing the purloined billfold. The witness' employment was that of forensic chemist for the KBI at its laboratory in Topeka. He had a bachelor's and master's degree in chemistry and had been a high school chemistry teacher for three years. For four years he was employed as a chemical engineer in the aircraft industry. He had worked at the laboratory of the Wichita police department for two

years. There he become involved in fiber analysis and comparison. His fiber comparisons were generally checked by his supervisor but there was never any disagreement with his conclusions. He began working for the KBI laboratory in February, 1971. Since his employment as a KBI forensic chemist he had done fiber comparison and had received on-the-job training there in that area and while at the Wichita police laboratory as well. He had been involved in microscopic comparisons for approximately thirteen years.

At trial Mr. Jones testified he examined the fibers and the metal fragments under high power magnification comparison microscopes. He also used two different wave lengths of light in comparing the fibers for color. Besides a brass fragment he isolated a red cotton fiber, a blue cotton fiber, a dark green synthetic fiber, a yellow synthetic fiber and a red-orange cellulose-type fiber on each garment. The pairs of fibers and fragments were indistinguishable from each other. In making his examination he took into account the length and diameter of the fibers as well as striations appearing on some of them. His testimony was based on the premise there are at least twenty different fibers commonly used in clothing manufacture with an almost infinite number of varying shades of colors.

Prior to any testimony by the witness as to probabilities the following colloquy occurred:

"Q. (By Mr. Morrison) Sir, based upon your reading, your experience and other background in this area, do you have an opinion as to the approximate probability of six fibers being found on one garment and also being found on another garment?

"Mr. Meinecke: Object to the form of the question, Your Honor. It assumes something not in evidence. We have got five fibers here.

"Mr. Morrison: Okay, let me clarify that question then.

"Q. (By Mr. Morrison) Five fibers and brass fragments?

"A. Yes, I have an opinion.

"Q. What is that opinion, sir?

"Mr. Meinecke: Your Honor, I am going to object on the competency of the evidence and the qualifications of the witness.

THE COURT: All right. Would you inquire what would be the basis in his experience and training for this opinion?

"Q. (By Mr. Morrison) What would be the basis for your opinion, sir?

"A. Well, it would be based on the relative occurrence of the different types of fibers in clothing garments. Clothing is made of approximately 20 different types of fibers."

The foregoing objection is the only one revealed in the record of trial pertaining to Mr. Jones' testimony. After it was made and in effect sustained by the trial court the witness went ahead with further explanation as to his examination and his premises for his opinion. In view of the lack of renewal objection so that further foundation might be laid if required, and the limited nature of the point on appeal, already quoted, we cannot say reversible error is presented. K. S. A. 60-456 provides for the admission of expert and other opinion testimony. A witness, in order to be competent as an expert, must show himself to be skilled or experienced in the business or profession to which the subject relates. He must be qualified to impart to the jury knowledge within the scope of his special skill and experience that is otherwise unavailable to the jury from other sources (*Grohusky v. Atlas, Assurance Co.*, 195 Kan. 626, 630, 408 P. 2d 697). The trial court has discretion to determine the qualification of a witness to testify as an expert and the admissibility of that testimony (*State v. Jones*, 209 Kan. 526, 498 P. 2d 65). When expert testimony is received in evidence the trial court is deemed to have made the requisite findings to support the qualification of the witness as an expert (K. S. A. 60-456 [*c*]) and to reverse the trial court on the issue, an abuse of discretion must be found (*Hagood v. Hall*, 211 Kan. 46, 505 P. 2d 736). Expert testimony is frequently resorted to in such matters as the identification of cloth, fabrics and textiles (2 Jones on Evidence, 6th ed., § 14.47). The witness here appears to have had considerable background and experience in the field of fiber analysis and comparison. He was sufficiently qualified as an expert in that area to give the testimony which he did and the trial court did not abuse sound discretion in permitting him to do so.

Appellant next contends it was improper to admit into evidence the shirt he was wearing at the time of his arrest because it was the product of a warrantless seizure conducted at a time and place remote from his arrest and without his consent. The shirt comprised part of the exhibit used by the forensic chemist in his testimony concerning fiber comparison.

Appellant was arrested at approximately 11:19 p. m. while in the alley about two blocks from the scene of the crime. The following morning about twelve hours later while confined in the jail section of the police department his clothing was taken from him and sent to the KBI laboratory for analysis. Our cases sanction the warrant-

less taking of items of wearing apparel from an accused after he has been jailed (*State v. Dodson*, 207 Kan. 437, 485 P. 2d 1010). A recent federal supreme court decision, *United States v. Edwards*, 415 U. S. 800, 39 L. ed. 2d 771, 94 S. Ct. 1234, dealt with the point. There the defendant was arrested shortly after 11:00 p. m. and detained in jail. More than ten hours later his clothing was taken from him, examined and held for evidence. At trial the result of the examination was received in evidence over defendant's objection that neither the clothing nor the report of its examination was admissible because the warrantless seizure of his clothing was invalid under the fourth amendment to the federal constitution. The court held that once an accused has been lawfully arrested and is in custody, the effects in his possession at the place of his detention that were subject to search at the time and place of arrest may lawfully be searched and seized without a warrant even after a substantial time lapse between the arrest and later administrative processing on the one hand, and the taking of the property for use as evidence on the other. The court concluded the delay in seizing defendant's clothing was not violative of the fourth amendment. The circumstances of the taking in the case at bar are virtually identical. Appellant's contention is without merit.

Finally, appellant asserts error in the prosecutor's closing argument in two respects. The first has to do with arguing alternative theories of guilt—direct participation and aiding and abetting—after electing to proceed on the latter theory. Objection was made at the time of the argument complained of and was sustained. Contemporaneously the trial court instructed the jury to disregard the particular argument. Additionally, in its general instructions the court told the jury not to consider matters to which an objection had been sustained. Whatever irregularity inhered in the argument, and it was minimal at most, was cured by the trial court's handling of the matter.

Appellant also asserts he was denied fair trial because the prosecutor in his closing argument injected his personal belief or opinion as to appellant's credibility as a witness. ABA Standards, The Prosecution Function § 5.8 (*b*) (1971) provide:

"It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant."

Our Rule No. 501, Code of Professional Responsibility, DR 7-106 (C) (4) (214 Kan. lxxxviii) states:

"In appearing in his professional capacity before a tribunal, a lawyer shall not:

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein."

Beyond the realm of professional niceties, arguments by the prosecutor indicating his personal belief or opinion that an accused is guilty may be considered and adjudicated in terms of the prejudicial effect thereof, rather than in terms merely of professional propriety (see anno: Prosecutor—Argument—Belief In Guilt, 50 ALR 2d 766).

Here there was no contemporaneous objection to the argument now complained of and that might well end the matter (see State v. Johnson, 210 Kan. 288, 297, 502 P. 2d 802). However, in our opinion the argument amounted to no more than comment on the inherent improbability of the testimony given by appellant and was not improper. Counsel may comment on the credibility of a witness where his remarks are based on the facts in evidence and a considerable latitude is allowed in that discussion (State v. Gauger, 200 Kan. 515, 438 P. 2d 455). Appellant was not prejudiced by the prosecution's closing argument.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.