No. 61,994

STATE OF KANSAS, *Appellee*, v. DANIEL RESER, *Appellant*.

(767 P.2d 1277)

Opinion filed January 20, 1989.

*Rick Kittel*, assistant appellate defender, argued the cause and *Benjamin C. Wood*, chief appellate defender, was with him on the brief for appellant.

*James W. Lusk*, county attorney, argued the cause and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: Daniel Reser appeals his jury convictions of five counts of rape, K.S.A. 1987 Supp. 21-3502, and three counts of aggravated criminal sodomy, K.S.A. 1987 Supp. 21-3506. Reser was sentenced to concurrent terms of imprisonment of five to twenty years on each count.

The victim was 14 years old on the morning of June 15, 1987. Her stepfather, Daniel Reser, came into her bedroom after her mother had gone to work. Reser awakened his stepdaughter by tearing aside her blankets and her nightclothes. He then raped her.

On the afternoon of June 20, the victim was on the phone with a classmate when the classmate heard her repeatedly asking Reser "to stop." The victim then hung up, ashamed because Reser was undressing her as she talked. Reser then threw the victim on the floor and raped and sodomized her.

On the morning of July 4, the victim was in bed asleep. There were guests staying in the house over the holiday, so the victim shared her bed with a 4-year-old boy. At about 7:00 a.m. Reser entered the victim's bedroom. He played with her breasts, put his hand inside her clothes, and put his finger in her anus. Although the victim could hear people talking downstairs, she testified she did not cry out because she did not want her mother and the little boy's mother to have to find out what Reser was doing to her. The little boy remained asleep throughout this incident.

On July 6, Reser raped the victim while she was alone at home. On another morning a few days before the victim went to cheerleading camp on July 20, Reser raped and sodomized her while her mother was at work. Reser again raped his stepdaughter on the morning of July 24, just after she returned from camp.

After the first incident, the victim began staying away from home with friends and relatives as often as she could to avoid Reser. On August 1, the victim's mother found a note from her daughter stating she was going to live with her sister. The mother went to where the victim worked and told her she must remain at home. She asked what the problem was and the victim started crying and said, "Mom, you don't want to know." The mother asked the victim if Reser had "gotten fresh" with her. She asked this because Reser had once told her he was sexually aroused by the victim. The victim finally told her mother of Reser's actions.

When confronted by his wife, Reser denied anything had happened. He then left the house and went to the police station to talk to his good friend, Ronald Dean, the town's chief of police. After a casual conversation, Reser began talking about how the victim had "become wild." He said he could see her while she bathed when he stood outside and looked through the window curtains. Reser ultimately told Dean he had had sexual intercourse with the victim. At trial, Reser acknowledged talking to his friend on August 1 but denied stating he had had sexual intercourse with the victim.

Helen Swan, a licensed social worker, testified for the State. Swan evaluated the victim on two different dates for a total of about four hours. She told the court she diagnosed the victim as suffering from post-traumatic stress disorder.

The defense objected, claiming Swan did not qualify as an expert qualified to diagnose or testify concerning post-traumatic stress syndrome. The trial court found Swan qualified as an expert after hearing her qualifications and the proposed testimony outside the presence of the jury.

Swan is not a psychologist or psychiatrist. She is an international expert on the subject of child abuse. She is licensed as a clinical specialist in Kansas and has a master's degree in social work from the University of Kansas. She has had twelve years of experience in the area of mental health: the first seven with the Johnson County Mental Health Center, and the last five in private practice specializing in child abuse cases. She has worked with over 200 cases of abuse. She has qualified as an expert witness in sexual abuse cases in Nebraska, Missouri, and Oklahoma as well as Kansas. She has been recognized on two separate occasions by the governor's conference in Kansas for her work and has received an award from the National Committee for the Prevention of Child Abuse, which is given to one person in the nation each year. She has published books and articles on the subject and has recently presented papers at international conferences on child abuse in Montreal, Amsterdam, and Paris. Swan is listed as an expert in child sexual abuse cases in the prosecutor's manual for child sexual abuse cases published in 1985 by the Kansas Bar Association.

Swan did not use the term post-traumatic stress syndrome before the jury, but testified that children who are sexually abused tend to report fairly consistent symptoms or common patterns of behavior resulting from the trauma. She noted children seldom report sexual abuse immediately, "particularly within family situations." The great majority "tend to keep it inside because they think it will go away or they don't want to embarrass people or they don't want to embarrass themselves."

Swan testified she had sufficient data to form an opinion as to whether the victim showed symptoms consistent with sexual abuse. She was of the opinion the victim exhibited behavior consistent with a child who had been sexually abused.

While the briefs of both parties leave the impression Swan testified the victim suffered from post-traumatic stress syndrome or rape trauma syndrome, that did not occur. The record is clear that Swan testified only as to traits and patterns common to

victims of sexual child abuse and that the victim exhibited some of these traits. She did not go into an explanation of the post-traumatic stress syndrome, nor did she try to narrow it to rape trauma syndrome.

The first issue on appeal is whether Swan's testimony was inadmissible because Reser did not claim consent as a defense. Kansas cases so far have allowed expert testimony on characteristics shown by rape victims only where the defense is consent. Reser's sole defense was that he was not present when the offenses were alleged to have taken place. He made no attempt to show his stepdaughter was not the victim of sexual abuse. Reser's defense did, however, necessarily imply the victim lied when she identified him as her assailant.

It is fundamental that in order for expert testimony to be admitted into evidence at trial it must be helpful to the jury. *State v. Hodges,* 239 Kan. 63, Syl. ¶ 1, 716 P.2d 563 (1986). Reser argues that evidence of the characteristics exhibited by sexually abused children did not aid the jury in the case at bar because he never denied his stepdaughter had been sexually abused. However, his argument ignores the requirement the State must prove every element of the crime charged, which included rape and sodomy. The victim's behavior subsequent to reported assaults is relevant corroborating evidence of the assaults. We find no error.

The second issue is whether there was adequate foundation to qualify Swan as an expert. The defense argues there was no showing Swan was qualified to diagnose symptoms consistent with child abuse or that the basis for her conclusions were accepted within her field of social work or within the fields of psychology or psychiatry.

Before an expert opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular field. *State v. Marks,* 231 Kan. 645, Syl. ¶ 7, 647 P.2d 1292 (1982). In *Marks,* we found rape trauma syndrome to be generally accepted as a common reaction to sexual assault so that such diagnosis by a psychiatrist was admissible. Here, the question is whether a social worker with great experience in sexual abuse cases is qualified to testify a victim exhibits some of the characteristics commonly found in sexually abused children.

The basis for admission of expert testimony is necessity, aris-

ing out of particular circumstances of a case where the normal experience of jurors needs augmentation to help them draw proper conclusions from the facts. *State v. Hodges,* 239 Kan. 63, Syl. ¶ 1. K.S.A. 60-456 limits expert testimony in the form of opinions or inferences to those based either on data perceived by or personally made known to the witness at the hearing or "within the scope of the special knowledge, skill, experience, or training possessed by the witness." K.S.A. 60-419 provides there must be evidence that a witness has personal knowledge of a material matter or "experience, training or education if such be required."

Whether a particular witness possesses the knowledge and experience to aid the jury and to testify as an expert concerning a material matter rests within the sound discretion of the trial court. *State v. Marks,* 231 Kan. at 655. When expert testimony is received in evidence the trial court is deemed to have made the findings required to support the qualification of the witness as an expert and its decision may not be reversed by this court unless we find an abuse of discretion. *State v. McClain,* 216 Kan. 602, 606, 533 P.2d 1277 (1975).

In *State v. Marks,* 231 Kan. 645, we unanimously held the trial court did not abuse its discretion in allowing expert testimony of a psychiatrist that the victim was suffering from rape trauma syndrome. We held the presence of rape trauma syndrome is relevant when a defendant argues the victim consented. 231 Kan. at 654.

*Marks* was reaffirmed by a divided court in *State v. McQuillen,* 236 Kan. 161, 689 P.2d 822 (1984). We held the trial court erred in refusing to allow expert testimony by a psychiatrist that the victim was suffering from rape trauma syndrome. The psychiatrist did not state that in his opinion the victim was raped or that the defendant raped her.

In *McQuillen,* we discussed three opinions which refused to allow expert testimony on rape trauma syndrome. In *People v. Bledsoe,* 36 Cal. 3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984), the witness was a counselor with a master's degree in a combined psychology and sociology program with experience with rape victims. She testified it was her opinion a 14-year-old girl suffered from rape trauma syndrome. She did not testify the victim was raped or that the defendant was the rapist. The court

held the syndrome inadmissible for the purpose of proving a rape occurred, although it might be relevant where the defendant attempts to play upon commonly held myths concerning how individuals react to rape by arguing the victim's actions were inconsistent with rape.

In *State v. Taylor*, 663 S.W.2d 235 (Mo. 1984), the court, although agreeing that rape trauma syndrome is generally accepted as a common reaction to sexual assault, found the trial court erred in allowing a psychiatrist to testify the victim suffered from rape trauma syndrome *as a result* of the *defendant's* actions. The court held that, although a qualified expert may testify the victim exhibits characteristics *consistent* with those resulting from a traumatic stress reaction, such as rape, the expert's testimony went too far into the issue of the victim's credibility.

Finally, in *State v. Saldana*, 324 N.W.2d 227 (Minn. 1982), a counselor for sexual assault victims with a bachelor of arts degree in social work and psychology testified as an expert witness that in her opinion the victim had been raped. The Minnesota court found the witness was not qualified to render an opinion as to whether the victim was telling the truth that she had been raped. It further found no expert could be allowed to testify as to the credibility of an adult victim of normal intelligence, and that no evidence of rape trauma syndrome could be allowed as it had not yet been proven to be of such reliability as to outweigh the prejudice caused the defendant by its creation of an aura of special reliability.

The Supreme Court of Minnesota distinguishes between admission of expert testimony on characteristics of sexual abuse for competent adults and for children. In *State v. Myers*, 359 N.W.2d 604 (Minn. 1984), the court found admissible a psychologist's testimony that he observed in the victim characteristics typically found in sexually abused children. Consent was not a defense to the crime and was not claimed by the defendant. The court found the nature of sexual abuse of children places lay jurors at a disadvantage, especially in incest cases. As incest is prohibited in almost all cultures, it was found to be beyond the common experience of the jury. Disclosure is often delayed because of the child's confusion, shame, and fear. Not only does this make prosecution of these crimes more difficult, but the jury may,

without an adequate foundation in common responses to such crimes, draw the wrong conclusion from the facts.

In *State v. Bressman,* 236 Kan. 296, 689 P.2d 901 (1984), we held the trial court committed prejudicial error in allowing an emergency medical physician without special training in psychiatry to testify as an expert witness. The doctor had seen over 30 individuals who had reported they had been raped. She testified not only as to common characteristics and emotional problems in these individuals and that the victim in the case had such symptoms, but also gave her opinion that the victim had indeed been raped. We held there was no showing that the basis for the doctor's conclusions was generally accepted in the field of psychiatry or that the doctor was qualified to make such a conclusion. We emphasized that *Marks* did not allow an expert witness to state an opinion that the victim had in fact been raped. We also distinguished *Marks* in that the appellant in *Bressman* denied that any sexual intercourse took place at all, rather than relying on the defense of consent.

In *State v. Lash,* 237 Kan. 384, 699 P.2d 49 (1985), we reaffirmed the distinction between expert testimony that the victim exhibited characteristics *consistent* with sexual abuse and an opinion that the victim *was* abused or that the defendant was the abuser. We denied the State's appeal from the trial court's ruling that a psychologist could not testify as to his opinion that a fifteen-year-old boy had been sexually molested by his father.

In *State v. Jackson,* 239 Kan. 463, 721 P.2d 232 (1986), we similarly reversed and remanded, holding the trial court erred in allowing two social workers to testify as to their opinions that a child victim was telling the truth and had been sexually abused by the defendant. The appellant in that case did not challenge the qualifications of the two social workers, who had extensive training and experience in child abuse investigation. We nevertheless partially distinguished the case from *Bressman* by finding there was sufficient foundation for the social workers to qualify as expert witnesses, as opposed to a medical doctor without specialized training. 239 Kan. at 469-70.

We again heard the *McQuillen* case after retrial in *State v. McQuillen,* 239 Kan. 590, 721 P.2d 740 (1986), where we held the court did not err in allowing a psychiatrist to testify as an expert witness. The psychiatrist "merely testified as to the

symptoms and behaviors that are outlined in the literature as being consistent with rape trauma syndrome, and that he observed those symptoms in this victim." 239 Kan. at 593. We affirmed the appellant's conviction, as the expert did not testify that in his opinion the victim was telling the truth, or that she had been raped, or that she had been raped by the appellant. The original *McQuillen* opinion implies the defendant argued consent. 236 Kan. at 172.

In the case at bar, the defense relies on *State v. Black,* 537 A.2d 1154 (Me. 1988), in which the court found only part of an expert's testimony was admissible. A psychiatric nurse with a master's degree in child psychology qualified, without objection, as an expert in a case in which a young boy was abused. The court held the expert's testimony proper to explain to the jury that a person who suffers a traumatic experience may have difficulty relating that experience in a chronological manner when the defendant attempted to use the victim's inconsistencies as proof the alleged acts did not take place. The court found inadmissible the expert's testimony that the child exhibited characteristics common to children who had been sexually abused. The expert testified that in her opinion a male adult in a trust relationship with the victim had sexually abused the victim by anal intercourse. The court found the validity of the expert's summary of symptoms encountered in sexually abused children was seriously impaired by selection bias because no comparison testing was done with children who were not victims of sexual abuse.

The instant case differs from *Black* in that here, the witness merely testified as to characteristics common to children who had been sexually abused and gave her opinion that the victim in this case exhibited some of these characteristics. In *Black,* the witness exceeded the diagnostic abilities accepted in her field by specifying that the victim had been sexually abused by anal intercourse with a male adult the victim trusted.

There are numerous cases from other jurisdictions where expert testimony regarding characteristics of sexually abused children has been held properly admitted as providing helpful background information to the jury.

In *Rodriquez v. State,* 741 P.2d 1200 (Alaska App. 1987), an expert's testimony concerning common characteristics of sex-

ually exploited children and a conclusion that the victim's behavior was consistent with this pattern was held admissible. The court found a significant difference between an expert witness testifying that a victim was telling the truth and a witness stating that the behavior of a victim falls within a common pattern. The expert witness was a social worker with a master's degree who had experience with sexually abused children.

In *Poyner v. State*, 288 Ark. 402, 705 S.W.2d 882 (1986), a school counselor with a master's degree in psychology who had been involved in over 25 child abuse cases testified as to common characteristics of sexually abused children. The court found the witness qualified as an expert because her education and experience with respect to child abuse were greater than those of ordinary persons and would be helpful to the jury in explaining the victims' reluctance to report their father's abuse.

In *Kruse v. State*, 483 So. 2d 1383 (Fla. Dist. App. 1986), the court upheld expert testimony by a psychiatrist that a child victim was suffering from post-traumatic stress syndrome. The concurring and dissenting opinion argued the expert went too far by also stating her opinion that the child had been sexually assaulted. The defendant had denied the victim's allegations without claiming consent.

In *State v. Le Brun*, 37 Or. App. 411, 587 P.2d 1044 (1978), *rev. denied* 286 Or. 149 (1979), the Oregon court held the trial court did not abuse its discretion in allowing a witness to testify as an expert. The appellant in that case had been convicted of rape and sodomy. The witness had a master's degree in social work and had worked in a children's services care unit for sexually and physically abused children. She then undertook employment as a rape victim advocate for a year, where she observed over 100 reported rape victims. The court found the witness was qualified by reason of knowledge and experience to aid the jury as an expert. It found proper the witness' testimony that the victim's emotional state comported with that of most sexual abuse victims.

In *State v. Radjenovich*, 138 Ariz. 270, 674 P.2d 333 (Ariz. App. 1983), the court approved testimony of a counselor who did not have a degree in psychology or psychiatry as an expert for the purpose of "showing that the victim's post-rape emotional reactions were consistent with other rape victims." In this case the defense was consent.

Finally, in *People v. Hampton*, 746 P.2d 947 (Colo. 1987), the court allowed expert testimony of common reactions to rape for the purpose of explaining the victim's delay in reporting. The expert witness had a master's degree in psychology and had extensive experience in working with victims of sexual abuse. The defense was alibi.

In *State v. Bishop*, 240 Kan. 647, 732 P.2d 765 (1987), the examining physician testified that in his opinion the victim had been sexually assaulted. We held the conclusion was error but refused to reverse the case, in part because there was no objection at trial. We also refused to reverse, however, on the grounds that there was abundant evidence in *Bishop*, aside from the testimony of the examining physician, to support the jury's verdict that the victim was raped by the defendant. We noted the expert did not testify, as in *Lash*, 237 Kan. 384, or as in *Jackson*, 239 Kan. 463, that the victim had been sexually abused by the *defendant*.

After a careful review of the foregoing cases, we conclude that Helen Swan, who is licensed as a clinical specialist, with a master's degree in social work, years of experience in the field of child sexual abuse and with world-wide recognition in the field of child sexual abuse, is eminently qualified as an expert to testify as to common patterns of behavior resulting from child sexual abuse and that this victim had symptoms consistent with those patterns.

The final issue is whether the trial court erred in failing to give PIK Crim. 2d 51.07 at the request of the defendant. The instruction provides: "You must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you." The committee on pattern jury instructions recommends this instruction not be given unless there are very unusual circumstances, and suggests that PIK Crim. 2d 52.09 is ordinarily a sufficient guide for the jury. PIK Crim. 2d 52.09 was given. It provides: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." The committee explains that PIK Crim. 2d 51.07 is normally objectionable in that, rather than telling the jury what to do, it tells it

what not to do. We concurred with the committee's recommendation in *State v. Sully,* 219 Kan. 222, 226, 547 P.2d 344 (1976).

The defense claims we may not base our decision on the fact the instruction tells the jury what not to consider because the court gave the jury PIK Crim. 2d 51.04, 51.05, and 51.06, all of which include statements explaining to the jury what it must not do. The committee suggests that PIK Crim. 2d 51.05 be given in ordinary cases. This instruction merely states that the jury must not concern itself with the reasons for evidentiary rulings. PIK Crim. 2d 51.04 requires the jury to disregard testimony not admitted into evidence, and PIK Crim. 2d 51.06 requires the jury to disregard statements which are not supported by evidence. These are standard instructions and are firmly rooted in the law.

The defense argues PIK Crim. 2d 51.07 is necessary because the jury was necessarily prejudiced by the disparity between the victim and the defendant. The victim was a 14-year-old high school girl, a cheerleader, and president of her class. The defendant was her 250 pound, 39-year-old stepfather. The incidents occurred in a small community in which it was likely the jurors were acquainted with both the victim and the defendant. The State notes the defendant was steadily employed, married, and had a large number of friends who testified in his behalf. No evidence of prior criminal acts was presented to the jury. There was no media coverage of the charges. The victim was not physically injured.

The defense attempts to analogize the instant case to *State v. Rhone,* 219 Kan. 542, 548 P.2d 752 (1976), stating that both cases involve sex offenses and young female victims. The analogy is not well taken. Although Rhone raped an 18-year-old woman, it was the testimony of the 50-year-old cancer victim whose home he burglarized which was in issue. The woman was in such an advanced stage of cancer that her doctor recommended her testimony be taken at her home. The appellant agreed to her trial testimony being taken at her home rather than by transcript but requested a jury instruction that "the fact that Mrs. B's physical health and that we had to go to her home to take testimony should not be considered in any way in giving any additional credibility to her testimony than would be given under the general credibility instruction." 219 Kan. at 545. We upheld the trial court's refusal to give the instruction, noting the court had

given an instruction in substantial accord with PIK Crim. 2d 51.07.

We have never held a trial court in error for refusing to give PIK Crim. 2d 51.07. The circumstances in which the trial court in *Rhone* did give the instruction were unusual. The circumstances of the instant case are not unusual in the criminal courts. The issue is without merit.

The judgment of the trial court is affirmed.