No. 70,122

STATE OF KANSAS, *Appellee,* v. DOUGLAS M. WILLIS, *Appellant.*
(888 P.2d 839)

*Reid T. Nelson,* assistant appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Glenn R. Braun,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

Review of the judgment of the Court of Appeals in an unpublished decision filed May 20, 1994. Opinion filed January 27, 1995.

The opinion of the court was delivered by

HOLMES, C.J.: The defendant, Douglas M. Willis, appeals from his conviction of one count of rape, asserting that the trial court erred in admitting expert testimony from a licensed social worker that the victim suffered from post-traumatic stress disorder and rape trauma syndrome. The Kansas Court of Appeals, in an unpublished opinion filed May 20, 1994, affirmed the trial court. This court granted defendant's petition for review. We reverse.

As the facts surrounding the alleged rape are incidental to the legal issues before us, they will be greatly summarized. On August

1, 1992, Willis accompanied a friend, Harry Brown, to a party at the home of W.S. The party lasted throughout the afternoon and evening. Considerable drinking of alcoholic beverages occurred, and W.S. became highly intoxicated. Defendant Willis and his friend left the party around 10:30 p.m., but Willis returned later, at which time the alleged rape took place. Willis admitted that he had sexual intercourse with W.S. but contends it was consensual and that no rape took place. W.S., on the other hand, contended the defendant raped her. Additional facts will be stated as necessary in discussing the issues appealed.

At trial, the principal issue was whether the defendant and W.S. had participated in consensual sexual intercourse or whether W.S. had been raped by the defendant. The jury found the defendant guilty of one count of rape, and the court sentenced him to 10 to 30 years.

At trial, Dr. Herbert Modlin, a senior psychiatrist with the Menninger Clinic, presented expert testimony regarding post-traumatic stress disorder and specifically rape trauma syndrome. Dr. Modlin explained both the history of post-traumatic stress disorder and the symptoms which are commonly associated with it. Ruth Durham, W.S.'s outpatient therapist from High Plains Mental Health Center, testified next over defense objections that W.S.'s behavior was consistent with rape trauma syndrome and that W.S. suffered from post-traumatic stress disorder. Durham's qualifications as an expert witness and her testimony are both at issue in this appeal.

The issues are two-fold: First, did the trial court err in finding Durham qualified to testify as an expert in the field of post-traumatic stress disorder and rape trauma syndrome and, second, did the court err in allowing Durham to testify that W.S. suffered post-traumatic stress disorder? The two issues are inextricably intertwined and therefore will be considered together.

Defendant argues that the trial court erred in receiving testimony about rape trauma syndrome from Durham. Defendant maintains that while Kansas case law allows qualified expert testimony concerning rape trauma syndrome, the only properly qualified expert is a trained psychiatrist. Durham is a licensed social

worker with a masters degree in social work. As such, defendant claims Durham was not qualified to present expert testimony on post-traumatic stress disorder and rape trauma syndrome and the trial court abused its discretion in allowing her testimony.

The State maintains that Durham's qualifications were adequate and consistent with Kansas case law addressing this question.

The use of expert testimony at trial is governed by K.S.A. 60-456, which provides in part:

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact." ·

In interpreting this statute we have held that in order to be competent as an expert, a witness must be skilled or experienced in the profession to which the subject relates. *State v. McClain,* 216 Kan. 602, 606, 533 P.2d 1277 (1975). Furthermore, an expert witness "must be qualified to impart to the jury knowledge within the scope of his special skill and experience that is otherwise unavailable to the jury from other sources." 216 Kan. at 606.

The Court of Appeals set forth the proper standard of review as follows:

"It is within the trial court's discretion to determine the qualifications of an expert witness and the admissibility of the testimony. *State v. McClain,* 216 Kan. 602, 606, 533 P.2d 1277 (1975). A trial court's determination that a witness is qualified to testify as an expert will not be reversed on appeal absent a showing of an abuse of discretion. *State v. Colwell,* 246 Kan. 382, Syl. ¶ 7, 790 P.2d 430 (1990)."

In finding that the trial court did not abuse its discretion in qualifying Durham as an expert witness on the subject of rape trauma syndrome, the Court of Appeals concluded that the facts of the instant case were indistinguishable from those of *State v.*

*Reser,* 244 Kan. 306, 767 P.2d 1277 (1989), which dealt with a similar question. As will be discussed later, we find the Court of Appeals' reliance on *Reser* to be misplaced.

Ruth Durham, a licensed social worker, gave expert testimony in the instant case. After testifying as to her training, schooling, and experience, and her contacts with W.S., the following testimony was elicited on direct examination by the State:

"Q: Has the diagnosis of [the victim] changed since the initial intake interview in August?

"A: Yes.

"Q: Within reasonable degree of medical certainty in your field, what is her current diagnosis?

"MR. COFFELT: [defense attorney] Objection. Your Honor. She is not qualified to give a professional opinion in that regard.

"THE COURT: Well, that's overruled, but I think—can you ask her if she made the diagnosis?

"Q: OK. Did you make the diagnosis on [the victim]?

"A: Yes I did.

"Q: That is a different diagnosis than what is contained in the initial intake report?

"A: Correct.

"Q: What is her current diagnosis?

"A: Post-traumatic stress disorder.

"Q: Is her behavior consistent with what has also been described at times as rape trauma syndrome?

"MR. COFFELT: Objection, no foundation for that. She is not qualified to answer that.

"THE COURT: Overruled.

"A: Yes."

Durham was allowed to testify not only that she had diagnosed W.S. as suffering from post-traumatic stress disorder but also that W.S. exhibited behavior or symptoms consistent with rape trauma syndrome.

In summarizing Durham's qualifications to testify as an expert the Court of Appeals stated:

"Durham's list of credentials is quite extensive. She has a Master's Degree in Social Work from the University of Pennsylvania and an Academy of Certified Social Workers designation and is licensed by the state as a Clinical Specialist Social Worker, achieving the highest level of social work certification possible in Kansas. She is licensed to be in private practice and has worked at the High Plains Mental Health Center for over five years as an outpatient therapist. Dur-

ham has worked with rape victims since 1976 and has trained numerous crisis phone line volunteers. She testified that she has counseled at least three or four rape victims a year for the last 15 years."

We agree with the Court of Appeals that Durham's list of credentials as a social worker is quite extensive. However, the issue here is not her qualifications to testify in the field of social work but her qualifications to make a medical diagnosis of post-traumatic stress disorder, characterized by Dr. Modlin as "mental illness."

The Kansas Supreme Court was the nation's first appellate court to address the question of the admissibility of expert testimony concerning rape trauma syndrome. In *State v. Marks*, 231 Kan. 645, 654, 647 P.2d 1292 (1982), this court held that "qualified expert psychiatric testimony regarding the existence of rape trauma syndrome" was relevant and admissible evidence in a rape case where the defense was consent. In *Marks*, the State presented expert testimony by Dr. Modlin. The issue in the case did not involve Dr. Modlin's qualifications but, instead, the question of whether testimony regarding rape trauma syndrome invaded the province of the jury. However, in concluding that the testimony was admissible, the court adopted the position that a psychiatrist with training in the particular field, such as Dr. Modlin, was a properly qualified expert regarding rape trauma syndrome. In doing so, the court stated:

"Appellant next attacks the admission of the expert testimony of Dr. Herbert Modlin, a board certified psychiatrist and neurologist who practices psychiatry and teaches at the Menninger Foundation. He is also one of a small number of doctors to be certified in the field of forensic psychiatry.

"During his testimony Dr. Modlin discussed the diagnosis and treatment of 'post traumatic stress disorders.' The condition is caused when a person experiences a 'very frightening, stressful event' and manifests itself in a kind of 'psychological hangover.' According to Dr. Modlin a type of post traumatic stress disorder labeled 'rape trauma syndrome' is the result of a sexual assault. . . .

"Dr. Modlin examined the victim two weeks after the rape. Based upon his psychiatric evaluation Dr. Modlin testified he was of the opinion she had been the victim of 'a frightening assault, an attack' and that she was suffering from the post-traumatic stress disorder known as rape trauma syndrome.

. . . .

"The identification of rape trauma syndrome is a relatively new psychiatric development. Even so, if the presence of rape trauma syndrome is detectable

and reliable as evidence that a forcible assault did take place, it is relevant when a defendant argues the victim consented to sexual intercourse. As such an expert's opinion does not invade the province of the jury. It is merely offered as any other evidence, with the expert subject to cross-examination and the jury left to determine its weight.

"In *State v. Washington,* 229 Kan. 47, 53, 622 P.2d 986 (1981), we stated 'before a scientific opinion may be received in evidence at trial, the basis of that opinion must be shown to be generally accepted as reliable within the expert's particular scientific field.' [Citation omitted.] Although *Washington* involved physical scientific evidence, the same test is applicable to the admission of testimony regarding a psychiatric diagnosis. [Citation omitted.]

"An examination of the literature clearly demonstrates that the so-called 'rape trauma syndrome' is generally accepted to be a common reaction to sexual assault. [Citations omitted.] As such, qualified expert psychiatric testimony regarding the existence of rape trauma syndrome is relevant and admissible in a case such as this where the defense is consent." 231 Kan. at 653-54.

In *State v. McQuillen,* 236 Kan. 161, 689 P.2d 822 (1984), the court was called upon to revisit our decision in *Marks.* The trial judge in *McQuillen* refused to allow Dr. Modlin to testify as to rape trauma syndrome. In doing so, the trial judge relied heavily on several cases from other jurisdictions decided after our decision in *Marks,* some of which specifically declined to follow *Marks: State v. McGee,* 324 N.W.2d 232 (Minn. 1982); *State v. Saldana,* 324 N.W.2d 227 (Minn. 1982); see *People v. Bledsoe,* 36 Cal. 3d 236, 203 Cal. Rptr. 450, 681 P.2d 291 (1984); *State v. Black,* 109 Wash. 2d 336, 745 P.2d 12 (1987). The trial judge in *McQuillen* was of the opinion that this court should reconsider its decision in *Marks.* While the principal issue in *McQuillen* was whether expert testimony regarding rape trauma syndrome was relevant evidence, this court upheld its earlier standard as to what qualified a witness as an expert on rape trauma syndrome. The court stated: "We reaffirm '[w]hen consent is the defense in a prosection for rape, *qualified expert psychiatric testimony* regarding the existence of 'rape trauma syndrome' is relevant and admissible." (Emphasis added.) 236 Kan. at 171. Additionally, the position of the court on the qualifications of an expert in this area was reflected further in Justice Herd's concurring opinion. In attempting to distinguish the California decision of *People v. Bledsoe,* 36 Cal. 3d 236, where the California court refused to follow

*Marks* and allow expert testimony regarding rape trauma syndrome, Justice Herd noted that the expert witness in *Bledsoe* "was merely a rape counselor, not a psychiatrist, and therefore would not qualify as an expert under *Marks*." 236 Kan. at 174 (Herd, J., concurring). In fact, the expert witness in *Bledsoe* had qualifications comparable to, or exceeding, those of Ruth Durham in the present case. The California court described the qualifications of the "rape counselor" as follows:

"Jacobson-Wigg, who has a masters degree in 'interdisciplinary studies'—a 'combination of psychological studies and sociological issues'— testified that she was a 'technical reserve' at the Huntington Beach Police Department and, in that capacity, saw rape victims the department referred to her. She also was the director of the 'Rape Prevention and Education Program' at the University of California, Irvine, and provided the campus community with education and counseling regarding issues concerning sexual assault. Jacobson-Wigg testified that between referrals from the police department and her own private practice, she had personally interviewed 50 to 60 rape victims." 36 Cal. 3d at 241 n.3.

Thus, Justice Herd's concurring remarks in *McQuillen* would apply equally to Durham's qualifications in this case.

The defendant argues that *State v. Bressman,* 236 Kan. 296, 689 P.2d 901 (1984),. is instructive, if not controlling, on the issue under review. In *Bressman,* the trial court allowed the victim's examining physician to testify that in her opinion the victim had been raped. This case did not involve expert testimony on rape trauma syndrome, as the defense was not consent, but rather that no sexual activity took place. The State's expert witness was an emergency medicine physician who examined the victim after the alleged assault. The expert had no special training in psychiatry, nor was she qualified to diagnose psychiatric conditions. The physician testified, however, that she had examined between 30 to 50 individuals who had complained of being raped. She testified further regarding her personal observations of the rape victims she had examined and stated that this victim's behavior was consistent with the behavioral patterns exhibited by rape victims examined by her. Over defense objections, the trial court then allowed her to testify that in her opinion the victim had been raped. 236 Kan. at 301-02.

In *Bressman*, the court held that the trial court committed prejudicial error in allowing the physician's testimony regarding her opinion that the victim had been raped. The court's holding was based upon three contributing factors. First, the court noted that the physician was not an expert in psychiatry and that no showing was made that the bases for her testimony were generally accepted in the field of psychiatry. Her conclusions were not based upon a psychiatric examination and diagnosis. Second, the court determined that the jury could properly assess the state of mind and actions of the victim without expert testimony. Third, the court stated that the expert testimony that the victim had been raped "of necessity had to pass upon the credibility" of the victim's story. 236 Kan. at 303-04. Finally, the court found that the holding in *Marks* had no application to the *Bressman* case. The court stated:

"We also wish to point out that our decision in *State v. Marks*, 231 Kan. 645, 647 P.2d 1292 (1982), has no application in this case. *Marks* held that, when consent is the defense in a prosecution for rape, qualified expert psychiatric testimony regarding the existence of 'rape trauma syndrome' is relevant and admissible. Here, consent was not the defense to the charge of rape." 236 Kan. at 304.

The court continued:

"In the case now before us, the medical expert was not specially trained in psychiatry and did not examine Mrs. T. for the purpose of rendering a psychiatric diagnosis as to whether or not Mrs. T. evidenced 'rape trauma syndrome.' Our decision in *Marks* does not in any way authorize a medical expert to testify that in his opinion the complaining witness in a particular case was raped. The expert psychiatric testimony authorized by *Marks* is restricted to the victim's state of mind and the existence of the 'rape trauma syndrome.'" (Emphasis added.) 236 Kan. at 304.

Defendant's reliance upon *Bressman* is based upon his assertion that there was "no showing that Ms. Durham had special training in psychiatry, and her experience with several patients per year is inadequate to qualify her [as] an expert." While *Bressman* does not address the specific factual situation of whether the parties engaged in consensual sexual intercourse as opposed to rape, it is relevant to the present discussion as it affirms this court's position, first stated in *Marks*, that for a person to testify as an expert

in the field of post-traumatic stress disorder and its variation known as rape trauma syndrome requires the witness to be specially trained in that field of psychiatry.

As stated earlier, the Court of Appeals in the present case relied exclusively on *State v. Reser,* 244 Kan. 306, our most recent discussion of rape trauma syndrome. In *Reser,* the defendant appealed his conviction on multiple rape and aggravated criminal sodomy charges committed against his 14-year-old stepdaughter. At trial, the State presented expert testimony by Helen Swan, a licensed social worker with a masters degree in social work and 12 years' experience in the area of mental health. While Swan was neither a psychologist or psychiatrist, she was considered an international expert on the subject of child abuse and had published various books and articles on the subject. The principal issue of the case was whether Swan was qualified to present expert testimony on whether the victim exhibited behavior consistent with that of a sexually abused child. See 244 Kan. at 307-08.

In relying on *Reser,* the Court of Appeals stated: "We are unable to distinguish the facts in the instant case from *Reser.* Willis and Reser were each accused of rape. The expert witness in each case was a licensed clinical social worker who testified that the victim was suffering from rape trauma syndrome." Durham, in the present case, testified that she had diagnosed the victim as suffering from post-traumatic stress disorder and specifically that the victim's behavior was consistent with someone suffering from rape trauma syndrome. Swan, in *Reser,* did not testify that the victim was suffering from rape trauma syndrome but merely that the victim exhibited some traits consistent with sexual child abuse.

In *Reser,* the court was careful to distinguish the testimony of Swan from that of expert testimony presented in both *Marks* and *McQuillen.* In pertinent part the court stated:

"*Swan did not use the term post-traumatic stress syndrome before the jury, but testified that children who are sexually abused tend to report fairly consistent symptoms or common patterns of behavior resulting from the trauma.* She noted children seldom report sexual abuse immediately, 'particularly within family situations.' The great majority 'tend to keep it inside because they think it will go away or they don't want to embarrass people or they don't want to embarrass themselves.'

"Swan testified she had sufficient data to form an opinion as to whether the victim showed symptoms consistent with sexual abuse. She was of the opinion the victim exhibited behavior consistent with a child who had been sexually abused.

*"While the briefs of both parties leave the impression Swan testified the victim suffered from post-traumatic stress syndrome or rape trauma syndrome, that did not occur. The record is clear that Swan testified only as to traits and patterns common to victims of sexual child abuse and that the victim exhibited some of these traits. She did not go into an explanation of the post-traumatic stress syndrome, nor did she try to narrow it to rape trauma syndrome."* (Emphasis added.) 244 Kan. at 308-09.

In concluding that the trial court did not err in ruling that Swan was qualified as an expert witness regarding child sexual abuse, the court in *Reser* reviewed and relied upon numerous cases from other jurisdictions. Our own review of each case indicates that none of the expert testimony presented involved the subject of rape trauma syndrome.

In the present case, Dr. Modlin had not met or examined W.S. but was called as an expert witness by the State "for purposes of educating the jury about the [rape trauma] syndrome itself." In his dissertation about post-traumatic stress disorder he testified not only that post-traumatic stress disorder is a *"proper medical diagnosis,"* but that he had "never seen it [one of the symptoms] in any other kind of *mental illness"* and that post-traumatic stress disorder was formerly known by the medical term "traumatic neurosis." (Emphasis added.) He also testified that rape trauma syndrome was one of many phases relating to post-traumatic stress disorder and that the individual phases, or syndromes as they are called, are merely an attempt to pinpoint or designate the perceived event or condition that may have led to the post-traumatic stress disorder.

While Ruth Durham was eminently qualified as a social worker, having been licensed by the behavioral sciences regulatory board, her background, experience, and licensure did not qualify her to diagnose medical and psychiatric conditions such as post-traumatic stress disorder.

The Court of Appeals' reliance upon *Reser* was misplaced, and its opinion clearly deviates from the standard adopted in *Marks*

and reaffirmed in *McQuillen* that for a witness to qualify as an expert on post-traumatic stress disorder and rape trauma syndrome, the witness must possess special training as an expert in that field of psychiatry. Such testimony should be limited to experts with training in the field of post-traumatic stress disorder and rape trauma syndrome and possessing the professional qualifications to make appropriate diagnoses thereof. A clinical social worker with a masters degree in social work falls well below that mark. We conclude the trial court erred in allowing Durham to testify as an expert in the psychiatric field of post-traumatic stress disorder and rape trauma syndrome. Defendant's objections to such testimony on the grounds of lack of qualifications of the witness and lack of foundation should have been sustained.

The admission of the testimony of Durham as set forth earlier in this opinion constituted an abuse of discretion and prejudicial error. Contrary to the State's arguments, we do not find the error to be harmless. In view of the foregoing, we need not consider defendant's other arguments.

The judgment of the district court and the judgment of the Court of Appeals are reversed. The case is remanded with directions to grant the defendant a new trial.